EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión de Wilfrid Caragol Rabel, Compuesta por: Wilfrid Frances Gerald Caragol Hernández, et als<br><br>Recurrentes<br><br>v.<br><br>Hon. Sandra Valentín Díaz, Registradora de la Propiedad Sección III de San Juan<br><br>Recurrida | Certiorari<br><br>2008 TSPR 112<br><br>174 DPR _____ |

Número del Caso: RG-2006-1

Fecha: 26 de junio de 2008

Abogados de la Parte Recurrente:

        Lcda. Vidal A. Reyes Flores

Abogado de la Parte Recurrida:

        Por Derecho Propio

Asociación de Notarios de Puerto Rico:

        Lcdo. Iván Díaz de Aldrey

Materia: Recurso Gubernativo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sucesión de Wilfrid Caragol
Rabel, Compuesta por: Wilfrid
Frances Gerald Caragol
Hernández, et als

       Recurrentes

          v.

Hon. Sandra Valentín Díaz,
Registradora de la Propiedad
Registro de la Propiedad
Sección III de San Juan

       Recurrida

RG-2006-01

Opinión del Tribunal emitida por el Juez Asociado SEÑOR RIVERA PÉREZ.

San Juan, Puerto Rico, a 26 de junio de 2008.

Tenemos la ocasión para resolver si el Código Civil y la Ley Notarial le imponen al notario autorizante de un testamento abierto la obligación de conocer a los testigos instrumentales. Para ello, debemos determinar si la intervención de los testigos instrumentales en el otorgamiento del testamento abierto es en carácter de comparecientes. Finalmente, debemos resolver si la falta de dación de fe del conocimiento de los testigos instrumentales vicia de nulidad el testamento en cuestión.

I

El 17 de abril de 1990, el señor Wilfrid Caragol Rabel, en adelante señor Caragol Rabel o

causante, otorgó un testamento abierto ante el notario Mario Zayas Carlo.[1] En dicho testamento el causante distribuyó su caudal hereditario en partes iguales entre sus siete (7) hijos, a saber, Wilfrid Frances Gerald, Elena Matilde, Charles Louis, José Antonio, Alberto Bernardo, Agustín Anselmo y María del Pilar, todos ellos de apellidos Caragol Hernández, en adelante Sucesión Caragol.

El 10 de septiembre de 2002, el señor Caragol Rabel falleció. Posteriormente, la Sucesión Caragol por conducto de su abogado, presentó una Instancia ante el Registro de la Propiedad a los fines de solicitar la inscripción de su derecho hereditario sobre una propiedad del causante.

Dos años más tarde, la Honorable Sandra Valentín Díaz, Registradora de la Propiedad de la Sección III de San Juan, en adelante la Registradora, le notificó al abogado de la Sucesión Caragol que el documento presentado adolecía de una falta que impedía la inscripción del derecho hereditario. En dicha notificación la Registradora indicó que, según se desprendía de la Instancia presentada, algunos de los herederos de la Sucesión Caragol estaban casados y no se había expresado el nombre de sus respectivos cónyuges.

Oportunamente, la Sucesión Caragol presentó una Instancia Enmendada en la que proveyó la información solicitada, subsanando así el señalamiento notificado por la Registradora.[2]

---

[1] Dicho testamento abierto se otorgó en San Juan mediante la Escritura Pública Núm. Tres (3) de 17 de abril de 1990. Apéndice del Recurso Gubernativo, págs. 21-25.

[2] Instancia Enmendada, *Íd.*, págs. 12-13.

El 5 de mayo de 2005, la Registradora le cursó a la Sucesión Caragol una nueva notificación de falta que impedía la inscripción del derecho hereditario de la Sucesión Caragol.[3] En esta ocasión la Registradora señaló que el testamento abierto otorgado por el señor Caragol Rabel adolecía de las faltas siguientes: (1) que a tenor con el Art. 634 del Código Civil de Puerto Rico, los testigos [instrumentales] no indicaron que ellos conocían al causante; y (2) que de conformidad con el Art. 17 de la Ley Notarial de Puerto Rico el notario no plasmó qué método utilizó para identificar a los testigos instrumentales y de conocimiento.[4]

Insatisfecha con la referida calificación, la Sucesión Caragol presentó un Escrito de Recalificación.[5] En el referido escrito, la Sucesión Caragol admitió que el notario autorizante del testamento abierto del señor Caragol Rabel no había consignado en el mismo que los testigos instrumentales conocían al causante y tampoco había indicado el método que utilizó para la identificación de éstos. No obstante, arguyó que dichas omisiones no impedían la inscripción del documento. Señaló, además, que ni el Código Civil ni la Ley Notarial exigen que el notario autorizante de un testamento abierto conozca a los testigos instrumentales.

---

[3] Notificación de 5 de mayo de 2005, Apéndice del Recurso Gubernativo, págs. 10-11.

[4] A pesar de que la Registradora, tanto en su notificación de falta como en su decisión final denegando la inscripción del derecho hereditario, hace alusión al Art. 17 del Reglamento Notarial, entendemos que quiso referirse al Art. 17 de la Ley Notarial, que es la disposición que trata de la materia en cuestión. Ello es así ya que la Regla 17 del Reglamento Notarial de lo que trata es del Depósito Judicial.

[5] Apéndice del Recurso Gubernativo, págs. 3-9.

Tras examinar el Escrito de Recalificación presentado por la Sucesión Caragol, la Registradora denegó nuevamente la inscripción del derecho hereditario.[6] Fundamentó su denegatoria arguyendo que de conformidad con el Art. 17 de la Ley Notarial[7] y con los Arts. 630-636 del Código Civil,[8] el notario no había expresado que conocía a los testigos instrumentales ni había plasmado el método que utilizó para identificarlos.

Inconforme aún, la Sucesión Caragol acude ante nos, mediante recurso gubernativo, aduciendo que la Registradora cometió el error siguiente:

> **NINGUNA DE LAS DOS OMISIONES DEL NOTARIO PRODUCEN AUTOMÁTICAMENTE LA NULIDAD DEL TESTAMENTO SINO QUE LO HACEN MERAMENTE ANULABLE. EN ESTE CASO NADIE HA IMPUGNADO EL TESTAMENTO, LOS HEREDEROS LO HAN RESPETADO Y HAN DISTRIBUIDO PARTE DE LA HERENCIA DE CONFORMIDAD CON LA VOLUNTAD DE SU CAUSANTE ALLÍ CONSIGNADA. POR TANTO, LA VALIDEZ DEL TESTAMENTO DEBE SOSTENERSE Y AUTORIZAR LA INSCRIPCIÓN DEL DERECHO HEREDITARIO.**

La Registradora presentó su escrito en oposición al recurso gubernativo instado por la Sucesión Caragol. En el referido escrito, la Registradora reiteró las faltas notificadas y **arguyó que éstas producían la nulidad del testamento otorgado por el señor Caragol Rabel.**

Posteriormente, la Asociación de Notarios de Puerto Rico, en adelante Asociación de Notarios, presentó una moción para intervenir como amicus curiae, petición que concedimos. En su memorando, la Asociación de Notarios arguye que ni el

---

[6] Denegatoria de Recalificación, *Íd.*, págs. 1-2.

[7] 4 L.P.R.A. sec. 2035.

[8] 31 L.P.R.A. secs. 2146 a 2152.

Código Civil ni la Ley Notarial le imponen al notario la obligación de conocer a los testigos instrumentales, y mucho menos de identificarlos por los medios supletorios. Fundamenta su posición arguyendo que de acuerdo con la doctrina, los testigos instrumentales no son otorgantes ni comparecientes toda vez que éstos no intervienen en el otorgamiento de la escritura.

Con el beneficio de la comparecencia de las partes y de la Asociación de Notarios, pasemos a resolver la controversia ante nos.

## II

En nuestro ordenamiento jurídico, de entronque civilista, las personas naturales tienen a su disposición el testamento como "mecanismo regulador del destino jurídico de sus bienes y obligaciones para después de su muerte".[9] El testamento es un acto solemne (o formal), por el que unilateralmente una persona sola (unipersonal) establece ella misma (carácter personalísimo) para después de su muerte, las disposiciones (patrimoniales o no) que le competan, pudiendo siempre revocarlas.[10] De esta definición se desprende que el testamento es un negocio jurídico solemne, unilateral, personalísimo[11] y revocable. Nuestro Código Civil le permite

---

[9] Efraín González Tejera, *Derecho de Sucesiones*, Ed. Universidad de Puerto Rico, 2002, Tomo II, pág. 1.

[10] Efraín González Tejera, *op. cit.*, pág. 9., citando a Manuel Albaladejo, *Manual de Derecho de Familia y Sucesiones*, Barcelona, Ed. Bosch, 1974, pág. 231.

[11] A esos efectos, el Artículo 619 del Código Civil, 31 L.P.R.A. sec. 2124 dispone, en lo pertinente, que en virtud del carácter personalísimo del testamento no "podrá dejarse su formación en todo ni en parte al arbitrio de un tercero, ni hacerse por medio de un comisario o mandatario."

a los individuos plasmar su última voluntad a través varios tipos de testamento, a saber: el testamento abierto, el testamento cerrado o el testamento ológrafo.

En el testamento abierto, el testador declara su voluntad póstuma en presencia del notario y de los testigos idóneos, quedando éstos enterados de lo que en él se dispone.[12] La publicidad de la última voluntad del testador ante el notario y los testigos es la característica distintiva del testamento abierto. Como se sabe, el Código Civil le impone al notario autorizante de un testamento abierto la obligación de cumplir con todas las solemnidades requeridas en dicho cuerpo legal. Ello con el propósito de asegurar la autenticidad del testamento abierto y así proteger la última voluntad del testador. Además, es una norma de derecho claramente establecida que en el testamento abierto, como en cualquier escritura, la Ley Notarial y su Reglamento rigen supletoriamente, complementando y asegurando el cumplimiento de las disposiciones del Código Civil.[13] Cónsono con lo anterior, en In re Irlanda Pérez[14] resolvimos que al otorgar un testamento abierto, por ser éste un instrumento público, el notario debe cumplir no sólo con las solemnidades contenidas en el Código Civil sino, además, con los

---

[12] Véase Artículo 628 del Código Civil, 31 L.P.R.A. sec. 2144. Debemos señalar que son testamentos abiertos el testamento en caso de epidemia y el testamento en inminente peligro de muerte toda vez que la última voluntad del testador es divulgada ante los testigos.

[13] Cintrón v. Cintrón, 70 D.P.R. 771, 781 (1950). (Énfasis suplido).

[14] 162 D.P.R. 358 (2004).

requisitos de forma que le imponen la Ley Notarial y su Reglamento.

A esos efectos, el Artículo 15 de la Ley Notarial[15] detalla las formalidades y las advertencias que el notario autorizante de un instrumento público tiene que consignar en el mismo. En lo pertinente, el inciso (d) del referido artículo dispone que el notario consignará en la parte expositiva de la escritura el "[e]l nombre y apellido o apellidos, según fuere el caso, la edad o mayoridad, [el] estado civil, [la] profesión y vecindad de los otorgantes, [el] nombre y las circunstancias de los testigos, de haber alguno, según sus dichos." Acto seguido, el inciso (e) de dicho artículo manifiesta, entre otras cosas, que el notario deberá dar fe del conocimiento de los otorgantes.

Es preciso advertir que el referido inciso no le requiere al notario dar fe expresa del conocimiento de los testigos instrumentales. No obstante, la Regla 29 del Reglamento Notarial señala que el notario "tiene el deber primario de asegurarse del conocimiento personal de los comparecientes y de conocerlos deberá dar fe de dicho conocimiento en el instrumento."[16] Indica, además, que de no conocer a los comparecientes, el notario así lo hará constar, procediendo a utilizar los medios supletorios de identificación.

Respecto al conocimiento que el notario tiene que tener de los comparecientes, hemos resuelto que ello no necesariamente implica ni obliga a que, al momento del otorgamiento, el

---

[15] 4 L.P.R.A. 2033.

[16] 4 L.P.R.A. Ap. XXIV, R.29.

notario deba conocer a los comparecientes en virtud de una relación previa. Bastará el conocimiento que el notario deriva de su juicio crítico a través de su relación y observación de los comparecientes en las etapas preliminares al otorgamiento.[17] La médula de la fe del conocimiento es que el notario se asegure de que el compareciente es quien dice ser.

Nótese que la aludida disposición legal le impone al notario la obligación de conocer a los comparecientes y dar fe de ello en la escritura pública. Empero, la citada regla guarda silencio en torno al conocimiento que debe tener el notario sobre los testigos instrumentales. Cabe señalar, que es en este estatuto que la Registradora apoya su denegatoria toda vez que entiende que los testigos instrumentales son comparecientes.

Por tanto, debemos determinar si el término "comparecientes" incluye a los testigos instrumentales o si por el contrario, el término "comparecientes" se refiere a una categoría distinta a la de los testigos instrumentales. Veamos.

La redacción de los instrumentos públicos en nuestra jurisdicción, al igual que en España, se rige por un sistema científico jurídico. Este sistema separa, en la redacción de los instrumentos, los elementos personales de los reales y de los formales, distinguiendo en el mismo diversas secciones o

---

[17] *In re* Cancio Sifre, 106 D.P.R. 386, 3894 (1977).

apartados.[18]    La  denominación  de  los  individuos  que presencian  el  acto  del  otorgamiento  y  la  autorización  de  un instrumento  público  se  determina  a  base  de  la  sección  o apartado  al  cual  forman  parte  <u>y  en  virtud  del  carácter  y  la naturaleza  de  su  intervención</u>.

Comencemos,  pues,  nuestro  análisis  definiendo  brevemente los  apartados  del  instrumento  público.  La  comparecencia  es  la parte  del  instrumento  público  en  donde  el  notario  plasma  el acto  que  constituye  su  objeto  y  las  personas  entre  quienes  se celebra.[19]  Por  otra  parte,  el  otorgamiento  es  la  parte  del instrumento  público  que  contiene  la  ratificación  formal  del consentimiento  manifestado  por  los  otorgantes  y/o  por  los comparecientes.

De  acuerdo  con  el  tratadista  Giménez-Arnau,  a  través  de  la comparecencia  los  individuos  ingresan  en  el  territorio  del instrumento  público.[20]  En  vista  de  que  la  comparecencia contiene  y  estampa  la  presencia  física  y  coetánea  de  los comparecientes  ante  el  notario,  ésta  es  un  hecho jurídicamente  significativo.  Ello  es  así  toda  vez  que  los comparecientes  han  rogado  la  intervención  del  notario  para  un

---

[18]   Enrique  Giménez-Arnau,  *Derecho  Notarial*,  2da  ed., Pamplona,  Ediciones  Universidad  de  Navarra,  S.A.,  1976,  pág. 516.

[19]  *Véase,*  Enrique  Giménez-Arnau,  *Derecho  Notarial*,  2da  Ed., Pamplona,  S.A.,  1976,  pág.  519.  Debemos  señalar,  además,  que a  través  de  la  comparecencia,  el  notario  realiza  una narración  documental  de  los  hechos  y  especifica  el  negocio jurídico  en  cuestión  y,  además,  detalla  las  particularidades del  mismo,  a  saber,  el  número,  lugar  y  fecha  del  instrumento, así  como  la  competencia  jurisdiccional  del  notario.

[20]  *Íd.,*  págs.  519-520.

acto oficial.[21] Además de plasmar la presencia física de los comparecientes, la comparecencia, según Nuñez Lagos, es el *Acta de la Sesión* que enlaza a los presentes toda vez que constituye el vínculo que une y sujeta a las personas que participan en el acto del otorgamiento.[22]

El tratadista Nuñez Lagos comenta que la comparecencia no sólo se refiere a los comparecientes –plano del instrumento– sino a las partes, es decir a los otorgantes, quienes son parte del plano del negocio jurídico.[23] Conforme a este razonamiento, podemos colegir que existe una diferencia entre el carácter de compareciente y de otorgante. Por ello, al evaluar si una persona es un compareciente o un otorgante (o parte) es preciso considerar los factores siguientes: el alcance de su presencia, la función de su intervención, su participación en el acto del otorgamiento, así como su relación respecto a los presentes.

En virtud de los factores antes mencionados, Nuñez Lagos define a los **comparecientes** del instrumento público como aquellas personas que prestan su conformidad a una narración exacta e íntegra, de los hechos en que han intervenido y aprueban con su firma la fidelidad del relato.[24] De esta definición podemos colegir que los comparecientes son aquellas personas que de forma voluntaria

---

[21] *Íd.*

[22] Rafael Nuñez Lagos, *Estudios de Derecho Notarial*, Ed. Marcial Pons, Madrid, 1986, Tomo II, pág. 36.

[23] Rafael Nuñez Lagos, *Los esquemas conceptuales del instrumento público*, Madrid, 1953, pág. 35. Véase, además, Enrique Giménez-Arnau, *op. cit.*, págs. 521-522.

[24] *Íd.* pág. 49.

y en virtud de un derecho rogado se presentan físicamente ante el notario para poner en marcha la actividad notarial.[25] En otras palabras, los comparecientes se personan ante el notario en aras de provocar la intervención notarial y la actuación de la fe pública notarial.[26]

A diferencia del compareciente, el **otorgante o parte** es aquel que en virtud de un interés común y una función coincidente en el otorgamiento, presta un concreto consentimiento, especial y notarial, al negocio y al instrumento público.[27] Es decir, el otorgante comparece físicamente ante el notario y compromete su patrimonio en el negocio jurídico en cuestión toda vez que ostenta un interés en el instrumento en el cual comparece.

A tenor con los postulados antes enunciados, salta a la vista la diferencia entre el carácter de compareciente y de otorgante en un instrumento público. El **compareciente**, en virtud del carácter instrumental que ostenta, es aquél que además de presenciar físicamente el hecho del otorgamiento, actúa en el mismo y con su actuación a veces, de hecho, vincula al otorgante o parte.[28] Por su parte, el **otorgante o parte**, en virtud del carácter negocial que ostenta, es aquél

---

[25] *Véase* Rafael Núñez Lagos, *Estudios de Derecho Notarial*, Ed. Marcial Pons, Madrid, 1986, Tomo II, pág. 27.

[26] Enrique Giménez-Arnau, *op. cit.*, pág. 521.

[27] *Véase*, R. Núñez Lagos, *Los esquemas conceptuales del instrumento público*, Madrid, 1953, págs. 49-50; Pedro Ávila Álvarez, Estudios de Derecho Notarial, 5ta Ed., Madrid, Ed. Montecorvo, 1982, p. 127.

[28] Tal es el caso del compareciente que otorga una escritura en representación del otorgante. Por ejemplo, el tutor en representación del pupilo; el director de una agencia o corporación en representación de ésta.

que compromete su persona o patrimonio en el negocio jurídico en cuestión, esté o no físicamente presente ante el notario. El tratadista Giménez Arnau sintetiza la diferencia entre comparecientes y otorgantes expresando que los comparecientes pertenecen al mundo de los hechos y los otorgantes al mundo del derecho.[29]

A pesar de que en muchos casos el propio otorgante (o parte) es quien comparece físicamente a la autorización del acto notarial, esto no varía ni invalida la distinción que existe entre el otorgante (o parte) y el compareciente, sino que la misma subsiste.[30] Es menester señalar que el otorgante puede desempeñar al mismo tiempo el rol del compareciente, toda vez que dicha confluencia subjetiva entre ambos caracteres es de carácter circunstancial y no necesario. Se trata de una mera coincidencia en los personajes del instrumento público y no de la identidad de los sujetos del mismo. No obstante, un compareciente no necesariamente es un otorgante toda vez que en su intervención notarial no siempre compromete su persona o patrimonio. Somos del criterio que se es otorgante y compareciente cuando el sujeto negocial sea la misma persona que el sujeto instrumental. Tal es el caso de la persona que comparece en nombre propio para establecer, modificar o extinguir relaciones jurídicas que le atañe.

A la luz de estos preceptos, es forzoso concluir que **están excluidos del concepto compareciente y otorgante**, el propio

---

[29] Enrique Giménez-Arnau, *op. cit.*, pág. 521.

[30] Rafael Nuñez Lagos, *Los esquemas conceptuales del instrumento público*, Madrid, 1953, pág. 27.

notario autorizante y los **testigos instrumentales.**[31]   En vista de que los testigos instrumentales, por las particularidades de su intervención y su participación en el testamento abierto, no están incluidos dentro de la clasificación de  compareciente, el tratadista Argentino I. Neri los **denomina como concurrentes ya que asisten al acto del otorgamiento y suscriben el mismo, sin establecer, por sí mismos, ninguna relación de derecho.**[32] Dicho de otro modo, los testigos instrumentales no son sujetos del acto del otorgamiento toda vez que éstos no son parte del negocio jurídico y no ingresan ni participan en el mismo.

De un sereno y reflexivo análisis, podemos colegir que los testigos instrumentales no son comparecientes.  En idénticos términos se expresa el tratadista Núñez Lagos quien designa a los testigos instrumentales como interventores, toda vez que su función, en el otorgamiento del instrumento público en cuestión, es puramente medial o instrumental. La intervención de los testigos instrumentales en el otorgamiento del testamento abierto es puramente medial o instrumental toda vez que éstos asisten al acto para imprimirle validez pero no establecen ninguna relación jurídica. Respecto a la intervención de los testigos instrumentales, Nuñez Lagos  expresa lo siguiente:

> **A veces intervienen determinadas personas con carácter puramente medial o instrumental, sin alcanzar en ningún momento la cualidad de sujetos,** ni del negocio jurídico (partes), **ni del documento**

---

[31] Enrique Giménez-Arnau, *op. cit.*, pág. 522.

[32]  Rafael Nuñez Lagos, *Los esquemas conceptuales del instrumento público*, Madrid, 1953. pág. 141.

**(comparecientes). Tales son los testigos instrumentales […].**

[E]l **testigo instrumental tiene por misión presenciar pasivamente un hecho: el otorgamiento de un documento público.** […] Pero no llega a alcanzar la cualidad de parte contratante y **permanece extraño a la relación jurídica de fondo.** (Énfasis suplido.)[33]

**La intervención de los testigos instrumentales en el testamento abierto es en calidad de espectadores de la última voluntad del testador y su presencia física resulta indispensable para asegurar la validez y la autenticidad del testamento.** Conviene recordar, además, que los testigos instrumentales son responsables de presenciar el acto del otorgamiento, entre otras cosas, con el propósito de servir de medio probatorio a los fines de testificar en su día, de ser necesario, ante el foro judicial competente sobre la ocurrencia de los hechos y los pormenores del otorgamiento del testamento. Además de servir como medio probatorio, la intervención de los testigos instrumentales en el testamento abierto abona a la fe pública y refuerza la autenticidad de los hechos toda vez que éstos comparten con el notario el juicio sobre la capacidad del testador.

Cabe resaltar que en la doctrina existe un debate en cuanto a si la presencia de los testigos instrumentales es necesaria en el otorgamiento de los instrumentos públicos. Algunos tratadistas sostienen que los testigos instrumentales son innecesarios en algunos actos *inter vivos*. No obstante, éstos opinan que en los actos *mortis causa* la presencia de

---

[33] Íd, pág. 74.

los testigos instrumentales es esencial para la validez del testamento ya que mediante los mismos <u>se comprueba si el testador es efectivamente quien dice ser y en el caso específico de los testamentos abiertos, éstos no sólo testimonian sino que –como dijimos anteriormente– comparten el juicio sobre la identidad y la capacidad del testador.</u>[34]

Bajo el crisol de este marco doctrinal, concluimos que para efectos del otorgamiento de los testamentos abiertos, los **testigos instrumentales, no son comparecientes y mucho menos otorgantes**. Dicha conclusión es la que se impone a la luz del rol que ejercen los testigos instrumentales en el otorgamiento del testamento abierto.

Los testigos instrumentales no ostentan las características inherentes y particulares de los comparecientes. En virtud de la función de los testigos instrumentales como coadyuvantes o colaboradores necesarios de la fe pública notarial,[35] la intervención de éstos es puramente medial o instrumental sin alcanzar en ningún momento la cualidad de comparecientes. Su cometido es imprimirle validez al acto de otorgamiento del testamento abierto presenciando pasivamente el otorgamiento de dicho testamento con el propósito de servir como medio de prueba, en caso de que sea necesario.[36] Es por ello que estamos contestes con la posición de la Asociación de Notarios a los

---

[34] Enrique Giménez-Arnau, *op. cit.*, pág. 709.

[35] *Íd.* pág. 704.

[36] Rafael Núñez Lagos, *Los esquemas conceptuales del instrumento público*, Madrid, 1953, pág. 74.

efectos de que la norma generalizada en el <u>notariado latino es que el concepto de compareciente no incluye a los testigos instrumentales</u>.

En vista de que los testigos instrumentales no son comparecientes, **resolvemos que el notario autorizante de un testamento abierto no tiene que conocer a los testigos instrumentales y mucho menos dar fe expresa sobre dicho conocimiento**. No encontramos razón alguna para requerirle al notario conocer personalmente a los testigos instrumentales, quienes figuran en el acto testamentario en virtud de un carácter medial. El hecho de que los testigos instrumentales compartan con el notario el juicio de la identidad y capacidad del testador, no es un fundamento para exigirle a éste que conozca a dichos testigos y, además, consigne en el testamento abierto la dación de fe del conocimiento. Los testigos instrumentales son extraños a la relación jurídica testamentaria que presencian y su intervención, en el otorgamiento del testamento abierto, no es en carácter de compareciente sino en calidad de interventores a los fines de imprimirle validez a dicho testamento.

En virtud del carácter medial e instrumental que ostentan los testigos instrumentales, somos del criterio que su identificación se reduce, a tenor con las disposiciones del Art. 15(d) de la Ley Notarial, a la **constancia de su *"[n]ombre y circunstancias personales, según sus dichos."*** (Énfasis suplido.) Esto es, el notario tendrá que consignar en el testamento abierto el nombre, la edad, el estado civil, la profesión y la vecindad de los testigos instrumentales.

Es imperativo puntualizar que <u>nuestro pronunciamiento no se extiende a los testigos de conocimiento</u>. Cuando el notario utilice a los testigos de conocimiento para identificar al testador, es imperativo e imprescindible para la validez del testamento que el notario conozca a los testigos de conocimiento y dé fe expresa de dicho conocimiento en el testamento.[37] Asimismo, cuando de conformidad con la Regla 31 del Reglamento Notarial[38] <u>los testigos instrumentales funjan</u> <u>como testigos de conocimiento en el otorgamiento del</u> <u>testamento abierto, el notario deberá conocerlos y dar fe</u> <u>expresa del conocimiento de éstos en el testamento.</u>

Por tanto, resolvemos que los testigos instrumentales no son comparecientes y el notario no está obligado a conocerlos ni a dar fe de ello en el testamento. La conclusión a la que hemos llegado se fortalece aun más al analizar las disposiciones del Código Civil relativas a los testamentos abiertos. Veamos.

## III

En aras de que el testamento abierto otorgado por el testador sea válido nuestro Código Civil requiere, *inter alia*, que el mismo sea otorgado ante <u>tres testigos idóneos</u> que conozcan, vean y entiendan al testador. Ello es así toda vez que el quehacer jurídico *mortis causa* ha sido investido

---

[37] Véase Artículos 634 y 649 del Código Civil, 31 L.P.R.A. secs. 2150 y 2186.

[38] 4 L.P.R.A. Ap. XXIV, R.31.

de mayores formalidades que los negocios *inter vivos*.[39]  Los tres testigos instrumentales tienen que ser idóneos, esto es, no pueden ostentar ninguna de las incapacidades establecidas en el Código Civil[40]; deben ver y entender al testador; y por los menos, uno de los tres testigos debe saber y poder leer y escribir.[41]  Ahora bien, de los tres testigos instrumentales que estarán presentes en el otorgamiento del testamento abierto, dos de ellos deberán conocer al testador y si no le conocieren, se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo notario y de los testigos instrumentales.[42]

Del citado artículo se desprende que cuando el notario no pueda identificar directamente al testador, esto es, que cuando dos de los tres testigos instrumentales no conozcan al testador, el notario suplirá la falta de conocimiento de éstos través de dos testigos de conocimiento. Es de vital

---

[39] Véase E. González Tejera, *Análisis del Término 2002-2003: Derecho de Sucesiones*, 73 Rev. Jur. U.P.R. 777 (2004).

[40] El Artículo 630 del Código Civil, 31 L.P.R.A. sec. 2146, dispone que no podrán ser testigos en los testamentos: 1. los menores de edad; 2. los que no tengan la calidad de vecinos o domiciliados en el lugar del otorgamiento; 3. los ciegos o totalmente sordos o mudos; 4. los que no entiendan el idioma del testador; 5. los que no estén en su sano juicio; 6. los que hayan sido condenados por delito de falsificación de documentos públicos o privados, o por el de falso testimonio; y 7. los dependientes, amanuenses, criados o persona otra alguna que trabaje en la misma oficina o sea socio, o pariente dentro del cuarto grado de consanguinidad o segundo de afinidad del notario autorizante. Véase también los Artículos 631 y 632 del Código Civil, 31 L.P.R.A. secs. 2147 y 2148.

[41] Artículo 644 del Código Civil, 31 L.P.R.A. sec. 2181.

[42] Artículo 634 del Código Civil, 31 L.P.R.A. sec. 2150.

importancia para la validez del testamento abierto que el notario autorizante del mismo conozca a los dos testigos de conocimiento toda vez que "la misión de éstos es servir de puentes de conocimiento entre el testador, el notario y los testigos [instrumentales]".[43]   Además de conocer a los testigos de conocimiento, el Artículo 649 del Código Civil[44] le requiere al notario que consigne, al final del testamento, una dación de fe a los efectos de que <u>conoce</u> al testador <u>y a los testigos de conocimiento, en su caso</u>. Al examinar este precepto, resolvimos que la dación de fe del conocimiento del testador y de los testigos de conocimiento es una solemnidad de fondo cuya omisión produce la nulidad del testamento.[45]

Al analizar integralmente los referidos estatutos así como las disposiciones del Código Civil aplicables a los testamentos abiertos, **surge con meridiana claridad que el notario tiene que conocer a los testigos de conocimiento <u>mas no a los testigos instrumentales</u>**. Los Artículos 634 y 649 del Código Civil, *supra*, no le imponen al notario la obligación de conocer a los testigos instrumentales ni tampoco le exigen plasmar en el testamento abierto la dación de fe del conocimiento sobre dichos testigos.  Es preciso señalar que el Artículo 649 del Código Civil, *supra*, hace alusión <u>únicamente</u> al conocimiento que tiene que tener el notario del testador y de los testigos de conocimiento.

Por tanto, concluimos que al amparo del Código Civil **la fe del conocimiento del notario se extiende solamente al**

---

[43] Efraín González Tejera, *op. cit.*, pág. 97.

[44] 31 L.P.R.A. sec. 2186.

[45] <u>Deliz Muñoz v. Igartúa Muñoz</u>, *supra.*

**testador y a los testigos de conocimiento. En consecuencia, el notario autorizante de un testamento abierto no tiene que conocer a los testigos instrumentales ni tiene que dar fe de dicho conocimiento en el testamento.**

Aun cuando reconocemos que la presencia de los testigos instrumentales es indispensable y esencial para la validez del testamento abierto, ello no significa que el notario tenga que conocerlos y dar fe en el testamento sobre dicho conocimiento.

Es imperativo señalar que no podemos supeditar la última voluntad de los testadores -en este caso, del señor Caragol Rabel- a requisitos de forma que el Código Civil no requiere. Resolver lo contrario equivaldría a insertar por *fiat judicial* una formalidad testamentaria en nuestro Código Civil, afectando así la integridad testamentaria y la voluntad póstuma del testador.

No obstante, la Registradora sostiene en su denegatoria que la jurisprudencia más reciente de este Tribunal ha resuelto que el notario tiene que conocer a los testigos instrumentales. Discrepamos. En <u>Deliz Muñoz v. Igartúa</u>, *supra*, resolvimos que el notario tiene que <u>dar fe expresa en el testamento del conocimiento del testador</u>. Adviértase, que en dicho caso no extendimos la fe del conocimiento del notario a los testigos instrumentales.

A tono con lo anteriormente expuesto, resolvemos que la Registradora erró al determinar que el Código Civil y la Ley Notarial le exigen al notario autorizante de un testamento abierto conocer a los testigos instrumentales. No podemos

avalar la determinación de la Registradora porque ello implicaría reducir la fe de conocimiento a una regla fija e invariable, produciendo así resultados contrarios a nuestro ordenamiento jurídico.

Asimismo, consideramos errado el argumento de la Registradora a los efectos de que el testamento del señor Caragol Rabel es nulo ya que el notario no expresó en el testamento abierto que conocía a los testigos instrumentales.

El Artículo 636 de nuestro Código Civil[46] dispone que "[s]erá nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas [en éste]". Conforme a dicho estatuto, hemos resuelto reiteradamente que las solemnidades cuya inobservancia conlleva la nulidad del testamento no deben ser "más ni menos que las precisas para hacer auténtica, segura y permanente la última voluntad del testador".[47] Habida cuenta de que el conocimiento de los testigos instrumentales por parte del notario no es una solemnidad de fondo requerida por el Código Civil, su omisión y la falta de dación a esos efectos no vicia de nulidad el testamento del señor Caragol Rabel. Puntualizamos, además, que la nulidad de un testamento abierto sólo puede ser determinada por los tribunales y no por los Registradores de la Propiedad.

Finalmente, nos resta aún determinar si la omisión del notario de dar fe de que por lo menos dos (2) de los testigos instrumentales conocen, ven y entienden al testador,

---

[46] 31 L.P.R.A. sec. 2152.

[47] Véase Paz v. Fernández, 76 D.P.R. 742, 752 (1954); Cintrón v. Cintrón, *supra*, pág. 775.

constituye una falta que impida la inscripción del derecho hereditario en el Registro de la Propiedad.

Hace diez décadas resolvimos en <u>Bardeguez v. Registrador</u>[48] que la omisión del notario de hacer constar en el testamento que los testigos instrumentales conocen, ven y entienden al testador no es una solemnidad de fondo por lo que puede entenderse suplida por la constancia del notario, en términos generales, de dar fe de haber cumplido con todas las formalidades legales.

Al examinar el testamento abierto del señor Caragol Rabel notamos que, en efecto, el notario no consignó que los testigos instrumentales conocían, veían y entendían al testador. No obstante, el notario plasmó al final del testamento la dación de fe general a los efectos de que había cumplido con todas las formalidades legales.

De conformidad con lo anterior, es forzoso concluir que la omisión en el testamento del señor Caragol Rabel de que los testigos instrumentales lo conocían, veían y entendían fue subsanada por la dación de fe general. Por ende, ello no impide la inscripción del testamento en el Registro de la Propiedad.

### IV

Por los fundamentos antes expuestos, resolvemos que los notarios no tienen que conocer a los testigos instrumentales ya que éstos no son comparecientes. Por tanto, la omisión de dar fe de ello en el testamento abierto no impide la

---

[48] 27 D.P.R. 214, 215-216 (1919).

inscripción en el Registro de la Propiedad de un derecho hereditario fundado en aquél.

Por tanto, se le ordena a la Registradora, Honorable Sandra Valentín Díaz que proceda a inscribir en el Registro de la Propiedad el referido testamento.  Se dictará sentencia de conformidad.

                          Efraín Rivera Pérez
                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sucesión de Wilfrid Caragol
Rabel, Compuesta por: Wilfrid
Frances Gerald Caragol
Hernández, et als

        Recurrentes

              v.

Hon. Sandra Valentín Díaz,
Registradora de la Propiedad
Registro de la Propiedad
Sección III de San Juan

        Recurrida

RG-2006-01

SENTENCIA

San Juan, Puerto Rico, a 26 de junio de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que los notarios no tienen que conocer a los testigos instrumentales ya que éstos no son comparecientes. Por tanto, la omisión de dar fe de ello en el testamento abierto no impide la inscripción en el Registro de la Propiedad de un derecho hereditario fundado en aquél.

Por tanto, se le ordena a la Registradora, Honorable Sandra Valentín Díaz que proceda a inscribir en el Registro de la Propiedad el referido testamento.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez emite Opinión de Conformidad y Disidente. El Juez Asociado señor Rebollo López no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sucesión de Wilfrid Caragol
Rabel, compuesta por: Wilfrid
Frances Gerald Caragol
Hernández, *et als*

    Recurrentes

       v.                        RG-2006-01

Hon. Sandra Valentín Díaz,
Registradora de la Propiedad
Registro de la Propiedad
Sección III de San Juan

    Recurrida

Opinión de conformidad y disidente emitida por la Juez Asociada señora Rodríguez Rodríguez.

San Juan, Puerto Rico, a 26 de junio de 2008

Estoy sustancialmente conforme con la Opinión que hoy dicta una mayoría en este caso. Sin embargo, debo expresarme brevemente en cuanto un aspecto de la Opinión que me preocupa y del cual disiento.

Comienzo expresando mi conformidad con la determinación de que la omisión del notario de hacer constar en el testamento que los testigos instrumentales conocen al testador queda subsanada por la dación de fe general. Ello así, pues ésta ha sido la normativa que impera en nuestra jurisdicción desde *Bardeguez v. Registrador*, 27 D.P.R. 214 (1919). Véase además, *In re López Toro*, 146 D.P.R. 756 (1998). Igualmente estoy conforme con la conclusión

del Tribunal de que no se requiere para la validez del testamento, que el notario conozca personalmente a los testigos instrumentales --como ocurre con el testador-- así como tampoco los tiene que identificar con métodos supletorios.

Ahora bien, disiento de las expresiones de la Mayoría de que los testigos instrumentales no son comparecientes. Estimo, que una lectura integrada del Reglamento Notarial permite concluir todo lo contrario. La Regla 27 del Reglamento, que regula la comparecencia reza de la siguiente manera:

> El Notario dejará consignado en el instrumento público **la calidad en que intervienen los comparecientes, bien fuere como otorgante, como testigo,** en capacidad representativa o en cualquier otro concepto.

Conforme lo anterior, tanto los testigos como los otorgantes se consideran en el Reglamento como comparecientes. Es decir, la categoría mayor es la de comparecientes y hay distintas clases, aquellos que comparecen como otorgantes o como testigos, entre otros.

En atención a lo anterior, entiendo que el Reglamento considera a los testigos instrumentales como comparecientes. Siendo así, el notario debe cumplir con lo ordenado en la Regla 29 del Reglamento, aun cuando el incumplimiento con esta disposición no vicie de nulidad el testamento.

                              Anabelle Rodríguez Rodríguez
                                      Juez Asociada