ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ANNE MARIE TERÓN AGUILÚ, ARNOY TERÓN AGUILÚ Y DIGNA DE JESÚS<br><br>Apelados<br><br>v.<br><br>ARDIN TERÓN SANTIAGO, AMIR J. TERÓN LLADÓ, MIRELY TERÓN LLADÓ, INA TERÓN MOLINA, IAN TERÓN MOLINA, FULANO DE TAL<br><br>Apelantes | **KLAN202300977** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2021CV02791<br><br>Sobre: Acción de Sentencia Declaratoria; Injuction Enriquecimiento Injusto; Nombramiento de un Contador-Partidor; Partición de Herencia |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio, y el Juez Bermúdez Torres[1].

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de enero de 2024.

Comparece el señor Ardín Terón Santiago (en adelante, el señor Terón Santiago o el apelante) mediante recurso de apelación presentado el 2 de noviembre de 2023. Solicitó la revisión de una Sentencia Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 6 de marzo de 2023 y notificada por edicto el 15 de septiembre de 2023. Mediante el referido dictamen, el foro primario confirmó la validez del: (a) testamento del señor Lorenzo Terón Del Rio otorgado ante el Notario José Juan González Torres el día 6 de junio de 2009 a las 10:30am mediante escritura número cuatro; y (b) testamento de la señora

---

[1] En virtud de la Orden Administrativa OATA-2023-188, se designa al Hon. Abelardo Bermúdez Torres.

Ana Amelia Santiago Avilés otorgado ante el Notario José Juan González Torres el día 6 de junio de 2009 a las 11:30am mediante escritura número cinco.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la sentencia apelada.

## I.

El 4 de noviembre de 2021, Anne Marie Terón Aguilú, Arnoy Terón Aguilú y Digna De Jesús (en adelante la señora Terón Aguilú o la apelada) presentó una *Demanda* contra el señor Terón Santiago, Amir J. Terón Lladó, Mirely Terón Lladó, Ina Terón Molina, Ian Terón Molina y fulano de tal.[2] En síntesis, allí se solicitó una sentencia declaratoria validando los testamentos abiertos del señor Lorenzo Terón Del Río y la señora Ana Amelia Santiago Avilés.[3]

Posteriormente, el 18 de mayo de 2022, el señor Terón Santiago radicó su *Contestación a la Demanda, Reconvención y Demanda conta Coparte* donde solicitó: (1) la nulidad de los testamentos abiertos del señor Lorenzo Terón Del Río y la señora Ana Amelia Santiago Avilés; y (2) la apertura del *ab intestado* de ambos causantes.[4] Además, en la *Reconvención* alegó que los referidos testamentos eran mancomunados con designaciones reciprocas en beneficio de tercero.[5]

De manera oportuna, el 15 de junio de 2022, la señora Terón Aguilú presentó su *Contestación a la Reconvención*[6] donde negó las aseveraciones de la referida *Reconvención*.

---

[2] Demanda, Anejo I, págs. 1-38 del Apéndice del Alegato del Apelante.
[3] *Íd.*
[4] Contestación a la Demanda, Reconvención y Demanda Coparte, Anejo IV, págs. 50-57 del Apéndice del Alegato del Apelante.
[5] *Íd.*
[6] Contestación a la Reconvención, Anejo V, págs. 58-60 del Apéndice del Alegato del Apelante.

Así las cosas, el 17 de octubre de 2022, la señora Terón Aguilú presentó una *Moción Solicitando Sentencia Sumaria Parcial*[7] en cuanto a:

    a) La validez del testamento del señor Don Lorenzo Terón Del Rio;
    b) La validez del testamento de la señora Dona Ana Amelia Santiago Avilés;
    c) Confirme la legitimación activa de la Co-Demandante, Digna de Jesús;
    d) Desestimando con perjuicio la Reconvención del demandado Ardín Terón Santiago por no exponer una causa de acción que justifique la concesión de un remedio a su favor;
    e) Que le imponga al demandado Ardín Terón Santiago las costas y honorario de abogado a favor de los demandantes debido a la crasa temeridad del demandado al instar una Reconvención sin base legal alguna; y/o
    f) Que conceda cualquier otro remedio que en derecho y/o equidad proceda ante estas circunstancias.

De igual forma, el 17 de octubre de 2022, el señor Terón Santiago radicó una *Moción en Oposición a Sentencia Sumaria*.[8] En síntesis, alegó que existen tres hechos en controversia: (1) que los dos testamentos abiertos fueron adverados y elevados a escritura pública; (2) que los dos testamentos abiertos son mancomunados con instituciones recíprocamente provechosas y beneficiosas a tercero; y (3) que los dos testamentos abiertos son nulos por el incumplimiento del Notario Público al no dar fe de que al menos dos testigos conocían al testador.[9]

Mientras que, el 14 diciembre de 2022, la señora Terón Aguilú presentó su *Réplica a Oposición a Moción de Sentencia Sumaria Parcial*.[10] En la misma, argumentó que los referidos testamentos abiertos eran completamente válidos y no adolecían de ningún vicio o error que

---

[7] Moción de Sentencia Sumaria Parcial, Anejo VI, págs. 61-85 del Apéndice del Alegato del Apelante.
[8] Moción en Oposición a Sentencia Sumaria, Anejo VII, págs. 86-91 del Apéndice del Alegato del Apelante.
[9] *Íd.*
[10] Réplica a Oposición a Moción de Sentencia Sumaria Parcial, Anejo VIII, págs. 92-97 del Apéndice del Alegato del Apelante.

amerite su nulidad.[11] Además, añadió que el planteamiento del señor Terón Santiago sobre los testamentos mancomunados era uno temerario que buscaba atrasar el proceso, entorpecer la última voluntad de los testadores y privar a los herederos de los bienes de la herencia.[12]

Entonces, el 6 de enero de 2023, el señor Terón Santiago presentó su *Dúplica a la Réplica en Oposición a Sentencia Sumaria*.[13] Mediante esta, arguyó que existían controversia de hechos y, por ello, debía de analizarse el elemento subjetivo, de intención y de propósitos mentales de los testadores.[14]

Así las cosas, el 6 de marzo de 2023, el foro primario declaró *Ha Lugar* la Solicitud de dictar sentencia sumaria parcial mediante la cual confirma la validez de los referidos testamentos abiertos.[15] A esos efectos, el Tribunal de Primera Instancia expresó lo siguiente:

> "Evaluados los Testamentos, podemos constatar que el Notario dio fe de la comparecencia de los otorgantes, conocer personalmente a los comparecientes incluyendo los tres (3) testigos comparecientes, que los testigos no tenían tacha legal para ser testigos y que estos tenían plena capacidad legal para actuar como testigos. El Notario también da fe de que él y los testigos entiendan que los otorgantes tenían la capacidad legal para otorgar los Testamentos. No surge de los Testamentos que haya habido requisitos esenciales e imprescindibles que no se hayan cumplido dando algún espacio para cuestionar que se haya garantizado la autenticidad y la veracidad de la última declaración de voluntad de los testadores." Íd.

---

[11] *Íd.*
[12] *Íd.*
[13] Dúplica a la Réplica en Oposición a Sentencia Sumaria, Anejo IX, págs. 98-99 del Apéndice del Alegato del Apelante.
[14] *Íd.*
[15] Sentencia Sumaria parcial, Anejo XI, págs. 101-111 del Apéndice del Alegato del Apelante. Enmendada por la Sentencia Sumaria Parcial *Nunc Pro Tucn,* Anejo XIII, págs. 113-123 del Apéndice del Alegato del Apelante.

Luego, las partes presentaron una *Moción de Reconsideración*[16] y una *Moción en Oposición a la Reconsideración,*[17] respectivamente, la cual fue declarada *No Ha Lugar* por el foro primario sin entrar en los méritos de esta.[18]

Inconformes, el 19 de abril de 2022, el señor Teron Santiago acudió ante este Tribunal presentando un recurso de *Apelación* identificado con la codificación alfanumérica KLAN202300343. Allí señaló los siguientes errores:

> PRIMER ERROR: Cometió error de hecho y de derecho el Tribunal de Primera Instancia al decretar la validez de dos testamentos abiertos que adolecen del insubsanable defecto formal de no haberse identificado a los testadores por los testigos.
>
> SEGUNDO ERROR: Cometió error de derecho el Tribunal de Primera Instancia al no estimar que los testamentos de los finados a pesar de estar en instrumentos públicos separados, son mancomunados.[19]

Este Tribunal de Apelaciones dictó Sentencia, el 25 de mayo de 2023, y determinó que el foro primario no incurrió en los errores señalados. *Íd.* En otras palabras, confirmó la *Sentencia Sumaria Parcial*.

Oportunamente, el 14 de junio de 2023, el apelante presentó una *Moción de Reconsideración y en Solicitud de Orden al Tribunal de Primera Instancia* en la cual señaló que la notificación de la Sentencia Sumaria Parcial emitida por el foro primario era inefectiva.[20] Argumentó

---

[16] Moción de Reconsideración a la Sentencia Sumaria Parcial, Anejo XVI, págs. 132-136 del Apéndice del Alegato del Apelante.
[17] Oposición a Moción de Reconsideración a la Sentencia Sumaria Parcial, Anejo XVII, págs. 137-138 del Apéndice del Alegato del Apelante.
[18] Orden resolviendo la Moción de Reconsideración, Anejo XVIII, págs. 139 del Apéndice del Alegato del Apelante.
[19] Sentencia del Tribunal de Apelaciones, Anejo I, págs. 1-15 del Apéndice del Alegato de la Apelada.
[20] Aunque dicha *Moción* no fue incluida en el expediente ante nuestra consideración, nos percatamos de ella y advinimos en conocimiento de su contenido mediante el Sistema Unificado de Manejo y Administración de Casos ("SUMAC"). *Véase* entrada número 100.

que el Tribunal de Primera Instancia no notificó su Sentencia mediante edicto a aquellas partes que no comparecieron, pero que habían sido emplazadas por edicto. *Íd.*

Así mismo, el 22 de junio de 2023, la apelada presentó una *Moción en Cumplimiento de Orden y en Oposición a Reconsideración de la Sentencia. Íd.* Allí refutó las alegaciones del Apelante y sostuvo que no procede la notificación de la referida Sentencia Sumaria Parcial a aquellas partes que no comparecieron por estas no ser parte indispensables. *Íd.*

En consecuencia, el 28 de junio de 2023, este Tribunal emitió una *Sentencia en Reconsideración* dejando sin efecto su Sentencia del 25 de mayo de 2023 y devolvió el caso al foro primario para que notificara la referida sentencia por edicto a aquellas partes que fueron así emplazadas. [21]

En cumplimiento con nuestra orden, el 13 de septiembre de 2023, el Tribunal de Primera Instancia emitió *Notificación de Sentencia por Edicto enmendada*.[22]

Por ello, el 2 de octubre de 2023, el apelante presentó una *Moción de Reconsideración a la Sentencia Sumaria Parcial* ante el foro primario. Durante esa misma fecha, 2 de octubre de 2023, la apelada presentó *Oposición a Moción de Reconsideración a la Sentencia Parcial*.

---

[21] Aunque dicha *Sentencia* no fue incluida en el expediente ante nuestra consideración, nos percatamos de ella y advinimos en conocimiento de su contenido mediante el Sistema Unificado de Manejo y Administración de Casos ("SUMAC"). *Véase* entrada número 100.

[22] Aunque dicha *Notificación* no fue incluida en el expediente ante nuestra consideración, nos percatamos de ella y advinimos en conocimiento de su contenido mediante el Sistema Unificado de Manejo y Administración de Casos ("SUMAC"). *Véase* entrada número 108.

A esos efectos, el 3 de octubre de 2023, el Tribunal de Primera Instancia declaró NO HA LUGAR la *Moción de Reconsideración* a Sentencia Parcial sin entrar en los méritos.

Aun en desacuerdo, el 2 de noviembre de 2023, el apelante sometió el recurso de *Apelación* que nos ocupa y señaló la comisión de los siguientes errores:

PRIMER ERROR: Cometió error de hecho y de derecho el Tribunal de Primera Instancia al decretar la validez de dos testamentos abiertos que adolecen del insubsanable defecto formal de no haberse identificado a los testadores por los testigos.

SEGUNDO ERROR: Cometió error de derecho el Tribunal de Primera Instancia al no estimar que los testamentos de los finados a pesar de estar en instrumentos públicos separados, son mancomunados.

TERCER ERROR: Cometió error de derecho el Tribunal de Primera Instancia al no hacer una inferencia razonable por deducción lógica que surge de los propios testamentos que hubo o pudo haber dolo civil o fraude en cuanto a la manifestación de que todos los bienes eran gananciales cuando no lo era.

Sobre esto, el 21 de noviembre de 2023, la apelada sometió su *Alegato en oposición*.

Con el beneficio de la comparecencia escrita de ambas partes, damos por perfeccionados el recurso de autos y procedemos a resolver.

## II.

### -A-

En nuestro ordenamiento, el mecanismo de Sentencia Sumaria procura, ante todo, aligerar la adjudicación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Rodríguez García v. UCA*, 200 DPR 929 (2018). Este mecanismo, está instituido en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y su función esencial es el permitir que, en aquellos litigios de naturaleza civil, una parte pueda mostrar,

previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016).

La solicitud de sentencia sumaria puede ser interpuesta por cualquiera de las partes que solicite un remedio por medio de una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Por consiguiente, se dictará sentencia sumaria, si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demostrasen que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que; como cuestión de derecho, procediese hacerlo. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

En cuanto a los hechos esenciales y pertinentes a los que se refieren el precitado cuerpo de Reglas, es sabido que estos son los que se conocen como hechos materiales. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. Por ello, la controversia deberá

ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

En lo particular, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento a seguir por las partes al momento de solicitarle al tribunal que dicte sentencia sumariamente a su favor. A esos efectos, la mencionada regla establece que una solicitud a su amparo, deberá incluir lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y (6) el remedio que debe concederse. Regla 36.3(a) (1-6) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a) (1-6).

Por otro lado, la parte que se oponga a que se dicte sentencia sumaria deberá controvertir la prueba presentada por la parte que la solicita. Para ello, deberá presentar su contestación a la moción de sentencia sumaria dentro del término de veinte (20) días

de su notificación. Dicho escrito, además de cumplir con los mismos requisitos con los que tiene que cumplir el proponente, deberá contener:

[…]

(b)

(1) […]

(2) [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. Regla 36.3 (b)(1-4)), 32 LPRA Ap. V, R. 36.3(b)(1-4).

Ahora bien, cuando se presente una moción de sentencia sumaria y se sostenga en la forma que establece la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones; sino que dicha parte estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra, si procede. Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). Por tanto, el oponente deberá controvertir la prueba presentada con evidencia sustancial y no podrá

simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 66 (2018).

Quiere decir que, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión*, supra, pág. 215. Si el oponente no controvierte los hechos propuestos de la forma en que lo requiere la Regla aplicable, tales hechos se podrán considerar como admitidos y se dictará la sentencia en su contra, si procediese. *Roldán Flores v. M. Cuebas, Inc.,* supra. De igual forma, si la parte contraria no presenta su contestación a la sentencia sumaria en el término reglamentario provisto, se entenderá que la moción de sentencia sumaria quedó sometida para la consideración del tribunal. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, Regla 36.3.

Por último, es preciso recordar que nuestro Máximo Foro ha dispuesto que, como Tribunal de Apelaciones, nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 122 (2015). A tales efectos, nuestra revisión será una *de novo* y el análisis que realizaremos se regirá por las disposiciones contenidas en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.

En *Meléndez González et al. v M. Cuebas*, supra el Tribunal Supremo pauto lo siguiente:

> "[Al revisar la determinación de primera instancia, el tribunal de apelación está **limitado** de dos maneras: *primero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o

affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia." Citando a *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004).

Por ello, de entender que procede revocar una sentencia sumaria, debemos indicar cuáles hechos esenciales y pertinentes están en controversia, e igualmente decir cuáles están incontrovertidos. Por el contrario, si encontramos que los hechos materiales (esenciales y pertinentes) realmente están incontrovertidos, nuestra revisión se limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el derecho o no. *Íd*, págs. 118-119.

-B-

El Artículo 616 del Código Civil de Puerto Rico de 1930, aplicable al caso ante nos, define el testamento como el acto por el cual una persona dispone para después de su muerte de todos sus bienes, o parte de ellos. 31 LPRA § 2121. Nuestro Tribunal Supremo reiteradamente ha expresado que éste constituye un negocio jurídico solemne, unilateral, personalísimo y revocable. *Sucn. Caragol v. Registradora*, 174 DPR 74 (2008).

El testamento abierto es aquel en que el testador manifiesta su última voluntad en presencia de las personas que deben autorizar el acto, quedando enteradas de lo que en él se dispone. Art. 628 del Código Civil, 31 LPRA § 2144. Este testamento es otorgado frente a un notario y tres testigos idóneos.

Sobre la idoneidad de los testigos que pueden comparecer en un testamento, el Artículo 630 de nuestro Código Civil, 31 LPRA § 2146, dispone lo siguiente:

No podrán ser testigos en los testamentos:

(1) Los menores de edad.
(2) Los que no tengan la calidad de vecinos o domiciliados en el lugar del otorgamiento, salvo en los casos exceptuados por la ley.
(3) Los ciegos o los totalmente sordos o mudos.
(4) Los que no entienden el idioma del testador.
(5) Los que no estén en su sano juicio.
(6) Los que hayan sido condenados por el delito de falsificación de documentos públicos o privados, o por el de falso testimonio.
(7) Los dependientes, amanuenses, criados, ni persona otra alguna que trabaje en la misma oficina, o sea socio, o pariente dentro del cuarto grado de consanguinidad o segundo de afinidad del notario autorizante.

El requisito de idoneidad implica que los testigos no posean ninguna de las causas de incapacidad enumeradas en el Código Civil; que vean y entiendan al testador; y, que por lo menos uno sepa y pueda leer y escribir. *In re López Toro,* 146 DPR 756, 766 (1998). Además, el notario y dos (2) de los testigos instrumentales deben conocer al testador. De no ser así, se deberán utilizar testigos de conocimiento o proceder con documentos de identificación y señas personales del testador. Art. 634-635 del Código Civil, 31 LPRA § 2150 y § 2151. En este contexto, nuestro Tribunal Supremo ha sido enfático en que la comparecencia de tres testigos idóneos es un requisito formal para la validez del testamento en ausencia del cual el testamento es nulo. *In re Rivera Vázquez,* 155 DPR 267, 282-283 (2001); véanse, también, *Rivera Pitre v. Galarza Martínez,* 108

DPR 565 (1979); *In re Méndez Rivera*, 141 DPR 753 (1996); *In re López Toro*, supra.

Además, el Código Civil de Puerto Rico de 1930 exige el cumplimiento de todas las formalidades indispensables para dar validez a cualquier testamento. Si no se cumple la forma delineada por el estatuto, no existe testamento. Ahora bien, la solemnidad testamentaria se refiere a requisitos esenciales para garantizar la autenticidad y la veracidad de la voluntad del testador, por lo que no todas las omisiones en que pueda incurrir un notario necesariamente vician de nulidad el testamento. Art. 636 del Código Civil, 31 LPRA § 2152; *In re Maldonado Rivera*, 159 DPR 73 (2003); *Paz v. Fernández*, 76 DPR 742, 752-753, 748 (1954).

Las solemnidades se dividen en dos clasificaciones, según la jurisprudencia: las de fondo y las de forma. *Deliz, et als. v. Igartúa, et als.*, 158 DPR 403 (2003); *Paz v. Fernández*, supra.

El Notario deberá dar fe expresa de haber cumplido con las solemnidades de fondo, es decir, debe surgir de la faz del testamento. *Paz v. Fernández*, supra. No se permite traer prueba extrínseca de su cumplimiento a posteriori. Entre éstas se encuentran la dación de fe de conocimiento y capacidad del testador, la dación de fe de que hubo lectura del testamento abierto y que, posterior a ello, el testador expresó su conformidad y la dación de fe de que se observó el requisito de unidad de acto. *Moreno Martínez v. Martínez Ventura, et al.*, 168 DPR 283 (2006)

En cambio, el cumplimiento de las formalidades externas o de forma no tiene que surgir expresamente de la faz del testamento. En este caso, es suficiente con

la dación de fe general de que se han cumplido todas las formalidades requeridas por la ley. Corresponde a los tribunales la apreciación en torno a si se han observado o no las formalidades de forma y las consecuencias que ello acarrea para hacer autentica la voluntad del testador. *Deliz, et als. v. Igartúa, et als.,* supra, *In re: López Toro*, supra; *Paz v. Fernández*, supra.

De modo que, para identificar si un testamento carece de una formalidad de forma o de fondo, es necesario evaluar si la ley exige que se consigne expresamente en el testamento el cumplimiento de la formalidad en cuestión. Ahora bien, si el Código Civil ordena que se haga constar expresamente algún requisito en el testamento mismo, la omisión de ese requisito es fatal para la validez del acto y no puede ser subsanado por la certificación de haberse observado todas las prescripciones legales. Por el contrario, cuando la omisión del notario es de naturaleza tal que la ley no exige que se consigne expresamente en el testamento, basta con que el notario dé fe de haberse observado todas las prescripciones exigidas por el Código Civil vigente respecto a los testamentos abiertos. *Deliz Muñoz v. Igartúa Muñoz*, supra; *In re: López Toro*, supra; *Pacheco v. Sucn. Pacheco*, supra. Así, lo establece el Artículo 649 del Código Civil en su última oración: "[e]l notario dará fe, al final del testamento, de haberse cumplido todas las dichas formalidades y de conocer al testador o a los testigos de conocimiento en su caso." 31 LPRA § 2186.

Al respecto, el Tribunal Supremo ha establecido que si bien el notario debe, en el cumplimiento estricto de su deber, consignar en el testamento quiénes de los

testigos instrumentales conocen al testador, tal omisión puede entenderse suplida por la constancia del notario, en términos generales, de dar fe de haber llenado todas las formalidades legales. *Bardeguez v. El Registrador*, 27 DPR 214, 215-216 (1919). Además, se ha resuelto que no exige que se utilice una fórmula sacramental para expresar que se ha cumplido con todas las formalidades. *Cintrón v. Cintrón*, 70 DPR 771 (1950). El notario no viene obligado a utilizar las mismas palabras que expresa el Código Civil. Puede utilizar otras que tengan el mismo significado o expresen la misma idea. I*n re: López Toro*, supra; *Paz v. Fernández*, supra.

-C-

En cuanto a los testamentos mancomunados, el Artículo 618 del Código Civil de Puerto Rico de 1930 establece que "[n]o podrán testar dos o más personas mancomunadamente, o en un mismo instrumento, ya lo hagan en provecho recíproco, ya en beneficio de un tercero." 31 LPRA § 2123.

L. Gerena Casanova, *El Código Civil de Puerto Rico de 2020: Cambios en la Sucesión Testada*, 90 (Núm. 3) Rev. Jur. UPR 895, 899 (2021), explica lo siguiente sobre el articulo 618 del Código Civil de 1930:

> Veamos ahora lo dispuesto en el artículo 1640 del Código Civil de 2020, sobre los testamentos mancomunados. Este artículo establece que "[d]os personas o más no pueden testar mancomunadamente o en un mismo documento, salvo que lo autorice la ley del Estado en que se otorga". Esto se encontraba codificado en el artículo 618 del Código Civil del 1930, el cual expresamente impedía realizar testamentos mancomunados. "La Ley en Puerto Rico prohíbe los testamentos mancomunados con objeto de evitar que, al testar juntas, una persona influya sobre la otra. Son mancomunados dos testamentos que se hacen en el mismo documento público. Si se hace en documento distinto, no es mancomunado". Es decir, testamento mancomunado es cuando dos o más personas otorgan un testamento en conjunto. Esto está expresamente prohibido porque se quiere salvaguardar el carácter personal e íntimo del proceso de testar,

mientras se resalta su unilateralidad. Por lo tanto, se destaca que solamente una persona puede suscribir un testamento, adquiriendo así la característica de ser una acción unipersonal, pues se pretende brindar al testador toda la libertad posible para disponer sobre sus bienes y evitar que terceros puedan transgredir sus anhelos. El catedrático Efraín González Tejera, en su libro Derecho de Sucesiones, resalta la importancia de que sea un acto unilateral, al plantear que "[l]a actuación individual por parte del autor del testamento es una condición necesaria de validez porque, si además del testador concurriera otra persona al acto de otorgamiento, se violentaría normas de derecho obligatoria, tales como la prohibición contra los pactos sucesorios y otros requisitos relacionados con su naturaleza personalísima." Y es que, evitar que sea un testamento mancomunado es una forma de destacar y honrar al testamento como un acto personal.

Por último, los tribunales debemos actuar con extrema cautela al interpretar las cláusulas testamentarias y evitar declarar la nulidad de un testamento basándonos en el apego a las formalidades. Los requisitos de forma son esenciales e imprescindibles sólo en la medida en que garantizan la autenticidad y la veracidad de que el contenido del testamento es la última voluntad del testador. *Deliz, et als. v. Igartúa, et als.,* supra.

### III.

En virtud del caso de epígrafe, el apelante nos solicitó la revisión de la Sentencia Sumaria Parcial, mediante la cual alegan que incidió el foro primario al decretar la validez del: (a) testamento del señor Lorenzo Terón Del Rio otorgado ante el Notario José Juan González Torres el día 6 de junio de 2009 a las 10:30am mediante escritura número cuatro; y (b) testamento de la señora Ana Amelia Santiago Avilés otorgado ante el Notario José Juan González Torres el día 6 de junio de 2009 a las 11:30am mediante escritura número cinco. Sin embargo, tras evaluar el recurso de autos, y la *Sentencia*

*Sumaria Parcial* apelada, a la luz del derecho aplicable, confirmamos el dictamen recurrido. Veamos.

Tal cual nos es exigido, debemos examinar *de novo* si la *Moción de Sentencia Sumaria Parcial* interpuesta por la apelada, así como la oposición instada por el apelante, cumplió con los requisitos de forma que exige la Regla 36.3 de Procedimiento Civil, supra. Examinadas ambas mociones, así como las réplicas y demás escritos sobre el asunto, concluimos que tanto la *Moción de Sentencia Sumaria Parcial* de la apelada, así como la oposición del apelante, cumplieron con tales requisitos.

Ahora, habiéndose determinado lo anterior, debemos evaluar si en el presente caso existen controversias de hechos materiales que impidan la resolución sumaria parcial del pleito.

Conforme surge del expediente, el foro primario en su Sentencia Parcial considero que no existía controversial sustancial sobre las siguientes cuatro determinaciones de hechos:

1. El señor Don Lorenzo Terón Del Rio compareció ante el notario José Juan González Torres el día seis (6) de junio de 2009, y aparece como único otorgante de la escritura número cuatro (4); este testamento se leyó, y firmo, a las 10:30 A.M. en San Juan, Puerto Rico (Testamento Terón del Río).
2. El Testamento Terón del Rio fue inscrito en el Registro de Testamento el 11 de junio de 2009.
3. La señora Doña Ana Amelia Santiago Avilés compareció ante el notario José Juan González Torres el día seis (6) de junio de 2009, y aparece como única otorgante de la escritura número cinco (5); este testamento se leyó, y firmo, a las 11:30 A.M. en San Juan, Puerto Rico. (Testamento González Torres y en conjunto con el Testamento Terón del Rio, los Testamentos).
4. El Testamento González Torres fue inscrito en el Registro de Testamentos el 11 de junio de 2009.

No obstante, el foro primario no hizo constar en su Sentencia Parcial los hechos controvertidos. Por estar relacionado, atendemos el tercer señalamiento de error. En su tercer señalamiento de error, el apelante sostiene que el foro primario erró al no hacer una inferencia razonable por deducción lógica sobre las afirmaciones fraudulentas que manifiestan ambos testadores en los referidos testamentos.

Evaluados los documentos que acompañaron a la *Moción de Sentencia Sumaria Parcial*, su Oposición y demás documentos del expediente, así como las determinaciones de hechos enumerados por el foro primario, no encontramos ningún señalamiento de fraude o dolo presentado por el apelante ni evidencia en respaldo de tal alegación. En otras palabras, según surge del expediente, el apelante no colocó en posición al Tribunal de Primera Instancia para atender su alegación de fraude. Aquí, claramente, se pretende litigar ante nos lo que no se trajo a la consideración del foro primario.

En nuestro Ordenamiento es harto conocido que este Honorable Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Esto, precisamente porque está basado en el expediente. Sin embargo, estamos limitados en atender y tomar en consideración aquella evidencia que las partes no presentaron ante el foro primario. *Melendez González v. M. Cuebas, supra.* De igual forma, las partes no pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante nos. Por lo tanto, estamos impedidos

de atender el tercer señalamiento de error en sus méritos.

Por entender que no existen hechos controvertidos, procedemos a revisar si el foro primario aplicó el Derecho correctamente y en conjunto atendemos el resto de los señalamientos de errores.

En cuanto al primer señalamiento de error, en síntesis, el apelante alega que los referidos testamentos son nulos debido al incumplimiento del Notario Púbico con el requisito formal de dar fe de que al menos dos testigos conocían a los testadores, y que al menos uno sabía leer y escribir. Sin embargo, tal y como repasamos en el derecho aplicable, la omisión del notario de consignar en el testamento quiénes de los testigos instrumentales conocen al testador queda suplida por la dación de fe general del notario. *Bardeguez v. El Registrador*, 27 DPR 214, 215-216 (1919).

En este caso, surge del expediente que el Notario dio fe: (1) de la comparecencia de los otorgantes; (2) de conocer personalmente a los comparecientes incluyendo los tres testigos; (3) de que los testigos no tenían tacha legal para ser testigos; (4) de que los testigos tenían capacidad legal para actuar como tales; y (5) que el como Notario y los testigos comparecientes entendieron que los otorgantes tenían capacidad legal para otorgar sus testamentos. Por último, el Notario dio fe de haber cumplido con todas las formalidades legales. Por lo tanto, el primer señalamiento de error no fue cometido y el foro primario aplicó correctamente el Derecho.

Finalmente, pasemos ahora a discutir el segundo señalamiento de error. El apelante sostiene, en su

segundo señalamiento de error, que los referidos testamentos a pesar de estar en instrumentos públicos separados son mancomunados.

El Código Civil de Puerto Rico de 1930, en su Artículo 618, prohíbe de forma clara y expresa que las personas otorguen testamentos mancomunados, es decir, en un mismo documento público de forma conjunta. 31 LPRA § 2123.

Tras evaluar detalladamente los testamentos, surge con meridiana claridad que ambos instrumentos públicos fueron otorgados de forma separada, independiente y en cumplimiento de las formalidades de ley. En consideración con lo antes expuesto, entendemos que el segundo señalamiento de error no fue cometido y el foro primario aplicó correctamente el Derecho.

## IV.

Por los fundamentos antes expuestos, se **CONFIRMA** la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, de forma consistente con lo aquí dispuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones